IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
                                    )
SIONE L. KAVA,                      )
                                    )
                 Plaintiff,         )
                                    )
     v.                             )  Civ. No. 20-00385 ACK-WRP
                                    )
KILOLO KIJAKAZI, Acting             )
Commissioner of Social Security,    )
                                    )
                 Defendant.         )
_____    )

## ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

For the reasons discussed below, the Court REVERSES the decision of the Commissioner and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

## BACKGROUND

In April of 2017 on a flight to Tonga, 52-year-old Plaintiff Sione Latu Kava suffered a heart attack, which rendered him unconscious and caused him anoxic brain injury. Opening Br. at 11. As a result, Kava was in a coma for three days. Id. Kava suffered another heart attack in 2019. Id.; Admin. R. ("AR") 44-45. Kava was previously self-employed and worked in landscaping water features. AR 38.

On June 15, 2017, Kava filed a Title II application for a period of disability and disability insurance benefits

("SSDI") and a Title XVI application for supplemental security income ("SSI"), alleging disability since April 15, 2017.  AR 17.  Both applications were denied initially and then upon reconsideration.  Id.  Kava requested a hearing before an administrative law judge ("ALJ"), which was held on January 29, 2020, and at which Kava appeared and testified with counsel present.  AR 34.  On February 13, 2020, the ALJ-Jesse J. Pease-issued his written decision finding that Kava became disabled on December 26, 2019 and was thus entitled to SSI benefits but not SSDI.  AR 28.  Kava sought review by the Appeals Council, which declined to review the ALJ's decision.  AR 1-3.  The ALJ's decision thus became the Commissioner's final decision.

Kava filed a complaint with this Court on September 8, 2020, seeking review of the social security disability benefits determinations.  ECF No. 1.  He filed his Opening Brief on June 1, 2021, ECF No. 17, and Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security (the "Commissioner"),[1] filed his Answering Brief, ECF No. 20.[2]  Kava then filed a Reply, ECF No. 23.  A telephonic hearing was held on September 9, 2021.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and was therefore substituted for Andrew Saul as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. See 42 U.S.C. § 405(g).

[2]  Defendant requested and the Court granted leave to file an oversized brief so as to explain the change in the analysis under the new regulations for applications filed on or after March 27, 2017.  At Kava's request, the Court also granted him leave to file an oversized reply brief to respond to Defendant's answering brief.

**STANDARD**

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[3/]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing court if it is free of legal error and supported by substantial evidence. See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards." See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions. See id. "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the

_____

[3/] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

3

Commissioner." Id. (internal quotation marks omitted). Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

But reviewing courts must be cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009); see also S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) ("If th[e] grounds [invoked by the agency] are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis").

## **DISCUSSION**

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment

4

renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see also 42 U.S.C. § 1382c(a)(3)(B).  A claimant must satisfy both requirements to qualify as "disabled" under the Social Security Act (the "SAA").  Tackett, 180 F.3d at 1098.

## I.   The SSA's Framework for Determining Disability

The regulations set forth a five-step sequential process for determining whether a claimant is disabled.[4/] Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see also 20 C.F.R. § 416.920(a).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see also 20 C.F.R. § 416.920(a)(4).  The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five.  Tackett, 180 F.3d at 1098; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

At step one, the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ

---

[4/]  The relevant provisions governing SSI set forth in 20 C.F.R. Part 416 are identical to those for SSDI set forth in 20 C.F.R. Part 404. Accordingly, the Court will only cite to the former regulations.

5

finds that the claimant is engaged in substantial gainful activity, the ALJ will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience.  Id. § 416.920(b).  Substantial gainful activity is work that is defined as both substantial (work activity involving significant physical or mental activities) and gainful (work activity done for pay or profit).  Id. § 416.972.  If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  Tackett, 180 F.3d at 1098.

Under step two, the ALJ considers the medical severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).  Only if the claimant has an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities" will the analysis proceed to step three.  Id. § 416.920(c).  If not, the ALJ will find the claimant is not disabled and the analysis ends there.  Id. § 416.920(a)(4)(ii).

The ALJ also considers the severity of the claimant's impairments at step three.  20 C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment described in the regulations.  Id.; see also id. § 416.925; id., Part 404, Subpart P, App. 1.  If the impairments meet or equal these

criteria, the claimant is deemed disabled and the analysis ends. 20 C.F.R. § 416.920(a)(4)(iii).  If not, the analysis proceeds to step four.  Id. § 416.920(e).

Step four requires the ALJ to determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e). RFC is defined as the most the claimant can do in a work setting despite his physical or mental limitations.  Id. § 416.945(a)(1).  In assessing a claimant's RFC, the ALJ will consider all of the relevant evidence in the claimant's case record for both severe and non-severe impairments.  Id.  The ALJ then uses this assessment to determine whether the claimant can still perform his past relevant work.  Id. § 416.920(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  Id. § 416.960(b)(1).  The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end. Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will again consider the claimant's RFC—as well as his age, education, and work experience—to determine whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that

7

demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." Id. § 416.960(c)(2); see also id. § 416.920(g).  If the claimant is unable to perform other work, he is deemed disabled.  Id. § 416.920(g).  If he can make an adjustment to other available work, he is considered not disabled.  Id.

## II.  The ALJ's Analysis

Here, the ALJ found at step one that Kava had not engaged in substantial gainful activity during the closed period, and at step two that he suffers from the following severe impairments:  acute myocardial infarction on April 15, 2017,[5/] with short-term memory loss due to organic brain damage, congestive heart failure, status-post placement of defibrillator (ICD), status-post stent placement, cardiac dysrhythmias, hypertension, stomach ulcer, arthritis, diabetes, obesity, sleep apnea, and intermittent gout.  AR 19.  At the third step, the ALJ found that Kava's impairments did not meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) & 416.920(d)).  AR 20.

Moving to step four, the ALJ found that Kava was unable to perform past relevant work, but that he did have the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)

---

[5/]  At the hearing before the ALJ, Kava testified that he had suffered another heart attack in 2019 (however, Kava presented no medical records thereof).  AR 44-45.

and 416.967(b) (e.g. can lift or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for about six hours out of eight; sit for about six hours out of eight), except for the following limitations:  "Claimant can perform occasional climbing stairs and ramps; can perform occasional balancing, stooping, kneeling, crouching, crawling; is precluded from excessive fumes, odors, dusts, gases or poor ventilation; can occasionally interact with hazardous machinery or unprotected heights, but no ladders, ropes, or scaffolds; can perform simple, routine, repetitive work."  AR. 21.

        In the fifth and final step, the ALJ concluded that Kava was not disabled prior to December 26, 2019, but became disabled on that date and has continued to be disabled.  AR 17-18, 28.  The ALJ determined that starting on the date Kava's age category changed (reaching age 55 on December 26, 2019), and considering Kava's age, education, work experience, and residual function capacity, there are no jobs that exist in significant numbers in the national economy that Kava could perform under 20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966.  AR 27-28.  In effect, the ALJ found Kava was not disabled from April 15, 2017 to December 25, 2019; but because he became a year older, he also became disabled.

        The Court notes that with Kava being 52 years old in 2017, Kava was "closely approaching advanced age" (age 50-54)

and accordingly "we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. 404.1563(d).  The Court further notes that the ALJ found that Kava has thirteen severe impairments as described <u>supra</u>.  AR 19, 25.

On appeal, Kava argues that (1) the ALJ inadequately considered the testimony of Mrs. Soana Kava, (2) the ALJ made an improper credibility assessment of Kava, (3) the ALJ erred by finding the opinion of the medical consultant persuasive, and (4) the ALJ failed to develop the record.  Kava alleges legal error and lack of substantial evidence as to each argument.

Kava further requests the matter to be reversed for an immediate award of benefits, or in the alternative, that the matter be remanded to the ALJ to properly consider the evidence and whether Kava was improperly denied benefits.  Opening Br. at 28.  The Court considers each of Kava's arguments in turn.

**III.   Whether the ALJ Erred in his Credibility Assessment of Kava**

Kava argues that the ALJ erred by failing to adequately consider his testimony.  Specifically, Kava argues that the ALJ failed to provide an adequate rationale for rejecting his symptom testimony and failed to discuss much of Kava's testimony at the hearing before the ALJ.  Opening Br. at 16.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first "determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted).  "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (internal quotation marks and citation omitted).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Id.  In addition, "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter

11

v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation marks omitted).

Here, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," AR 22, and there was no apparent record evidence of malingering (nor did the ALJ point to any). The ALJ did, however, find that Kava's statements concerning intensity, persistence, and limiting effects of the symptoms were not fully supported by the medical evidence as a whole. Id. The ALJ found that Kava's allegations were undermined by the largely normal findings from medical examinations.

Kava asserts that the ALJ cherry-picked from the testimony by ignoring testimony confirming his symptoms and limitations. Specifically, Kava accuses the ALJ of (1) mischaracterizing his testimony regarding his sleep apnea, (2) failing to properly incorporate his symptoms of fatigue, and (3) improperly discounting his testimony regarding cognitive difficulties. See Opening Br. at 17-22.

The Court finds the ALJ did not offer clear and convincing reasons for discounting Kava's subjective testimony on these three points.

**A. Sleep Apnea Testimony**

Kava first argues that the ALJ mischaracterizes his testimony regarding his sleep apnea and the continuous positive

airway pressure ("CPAP") mask that he attempted to use to treat his condition.  Opening Br. at 17.  The ALJ stated that Kava "admitted that he did not keep his [CPAP] mask on at night."  AR 22.  The ALJ described Kava's trouble using the CPAP mask as a "lack of compliance," AR 25, (as had Dr. Lawler in her treating notes).  See AR 734.

Unexplained or inadequately explained reasons for failing to seek medical treatment or follow a prescribed course of treatment can cast doubt on a claimant's subjective complaints.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, the ALJ must consider possible reasons a claimant has not sought more treatment, including access, their ability to structure their activities to minimize symptoms to a tolerable level, their understanding of the need for or importance of treatment, or unbearable side effects from treatments.  See Social Security Ruling 16-3p.

The record indicates that Kava clearly explained his reason for not following his prescribed course of treatment, testifying that he found the CPAP mask to be very difficult to operate and that its operation was often outside of his control when he was asleep.  AR 48 ("Sometimes I no can breathe and I have to take it off.  And then some-left it on my nose but I don't, you know.").  Kava's testimony was corroborated by that of Mrs. Kava, where she explained that "as soon as he sleep, he

13

automatically pull it off." AR 60.  Because Kava is asleep

while he's using the mask, the testimony of Mrs. Kava was

critical in understanding Kava's noncompliance, yet the ALJ made

no mention of it.  See AR 48 ("When I get up this morning, [Mrs.

Kava] tell me what happened last time.  And some I can remember

and some I just don't even know it.").  Mrs. Kava further

explained that their family had to watch Kava while he slept

because he often stopped breathing or could not keep his CPAP

mask on his face.  AR 60.

The ALJ failed to discuss Kava's testimony on the

sleep apnea issue which provided context to his noncompliance

with the course of treatment.  The ALJ therefore committed clear

error because he did not offer adequate reasons for discounting

Kava's testimony regarding his experience with the CPAP mask.

### B. Fatigue Testimony

At the hearing, Kava testified that he now tires very

easily, explaining that he used to walk every morning but is

unable to do so now.  AR 44.  But in his decision, the ALJ found

Kava's reports of fatigue to be contrary to his medical exams.

AR 23 ("Claimant reported fatigue in April 2018, but the

objective findings were rather insignificant, leading to an

assessment of questionable etiology.").  The ALJ also noted that

the medical record shows that Kava walks for exercise, AR 23,

usually five times a week.  See AR 116.  Based on those

findings, the ALJ reduced Kava to light work with additional nonexertional limitations "to account for residual symptoms including periods of shortness of breath and some reported fatigue, though with otherwise improved EF and unremarkable physical exam findings."  AR 24.

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements.  Bray, 554 F.3d at 1227.  But this cannot be the only reason provided by the ALJ.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); see Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that although objective medical evidence cannot serve as the sole ground for rejecting a claimant's credibility, it is a "relevant factor in determining the severity of the claimant's pain and its disabling effects.").

While the Court acknowledges that the ALJ did take Kava's fatigue into account, the Court agrees with Kava that the ALJ did not sufficiently analyze the extent of Kava's fatigue. Kava consistently complained of fatigue and difficulty walking. See AR 140, 429, 734, 741, 801.  In March of 2019, Kava reported that he was "tired all of the time" and he indicated in a health questionnaire that he felt tired or had little energy and had

trouble falling asleep, staying asleep, or sleeping too much
nearly every day.  See AR 734, 741.  Because the objective
medical findings alone may not be the ALJ's only rationale in
discounting Kava's testimony about his fatigue, the Court finds
that the ALJ committed clear error by failing to adequately
account for Kava's fatigue in his determination.

### C. Cognitive Difficulties Testimony

Kava next argues that the ALJ did not provide clear
and convincing reasons for discounting his testimony regarding
his cognitive difficulties.  In his decision, the ALJ cited to a
note from Dr. Lawler in which she indicated that Kava's problems
with words and memory were "stable."  AR 21.  However, the ALJ
failed to discuss the fact that Dr. Lawler indicated that even
though Kava's cognitive difficulties were stable, she was going
to closely monitor the symptoms and order a neuropsychological
test.  AR 766.  As for Kava's testimony, when asked at the
hearing whether his memory was back to normal, he answered no.
AR 43.  When asked whether he can remember things twenty years
ago, Kava again answered no.  Id.

The ALJ discounted Kava's testimony regarding his
memory problems by the fact that Kava was able to travel.  AR
23.  A claimant's daily activities may support an adverse
credibility finding if the claimant's activities contradict
their own testimony.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir.

2007).  However, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [their] credibility as to [their] overall disability." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 (9th Cir. 2004).

The ALJ found Kava's ability to travel inconsistent with his allegations of cognitive difficulties.  AR 23 ("That claimant could travel and that he denied memory/speech changes also suggests that claimant was able to sit for long periods and that his cognitive function was not overly limiting.").  The Court finds the ALJ failed to identify any specific inconsistency between the identified activity and Kava's allegations.  Kava's testimony did not indicate that he traveled frequently or by himself,[6/] and the ALJ failed to explain how this activity was inconsistent with Kava's testimony.  The Court therefore finds that the ALJ clearly erred because Kava's ability to travel was not a clear and convincing reason to discount Kava's testimony on his cognitive difficulties.

**IV.  Whether the ALJ Erred in his Consideration of the Testimony of Mrs. Soana Kava**

Kava also argues that the ALJ erred by failing to consider most of Mrs. Soana Kava's testimony, maintaining that Mrs. Kava's testimony was critical because Kava suffered from memory loss and cognitive problems and could not provide a

---

[6/]  At the hearing, Kava's counsel stated that she believed Kava traveled with family.

complete or accurate picture of his own functioning (including why his continuous positive airway pressure ("CPAP") mask would become removed while he was asleep). Opening Br. at 12. In Kava's view, had the ALJ considered her testimony, he "might have found that [Kava's] cognitive and physical impairments would have required more significant restrictions in the RFC." Id. at 14. Therefore, Kava argues, while the ALJ was not required to adopt Mrs. Kava's observations or findings, he was required to consider them. Id. at 12. While the ALJ is generally not required to consider lay witness testimony under the revised regulations, the specific circumstances in this case necessitated such consideration.

Prior to the revised regulations, lay testimony as to a claimant's symptoms is "competent evidence that [an ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). Germane reasons include inconsistencies between the testimony and the medical evidence, claimant's presentation to treating physicians, and failure to participate in prescribed treatment. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Under the revised regulations, evidence from nonmedical sources is defined as "any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).  For cases that, like Kava's, were filed on or after March 27, 2017, the regulations no longer require the ALJ to articulate how he or she considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).  Whether the ALJ should provide written analysis about such evidence depends on the circumstances of each case. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017) ("Depending on the unique evidence in each claim, it may be appropriate for an adjudicator to provide written analysis about how he or she considered evidence from nonmedical sources, particularly in claims for child disability.").

A few courts within the circuit have addressed how ALJs are to consider witness statements within the regulatory changes.  Several recent Oregon cases have addressed ALJs' failures to provide adequate reasons for rejecting statements from lay witnesses, and have concluded that the revised regulations do not excuse the ALJs of their requirement to address the evidence.  See Tanya L. L. v. Comm'r of Soc. Sec. Admin., C/A No. 3:20-cv-78-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (noting that the ALJ "does not have to use the

same criteria as required for medical sources," but that the amended regulations "do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements."); Joseph M. R. v. Comm'r of Soc. Sec. Admin., C/A No. 3:18-1779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (stating although "the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements"); Shirley C. v. Comm'r, Soc. Sec. Admin., No. 1:20-CV-01212-MK, 2021 WL 3008265, at *7 (D. Or. July 15, 2021) (finding that "the ALJ failed to supply a germane reason to reject the lay witness statements" and his "failure to explicitly reject the remaining portions of lay witness statements was error").

Kava takes issue with how the ALJ assessed Mrs. Kava's testimony on his memory issues, the problem of him removing his CPAP mask while asleep, and his ability to walk.  The Court addresses each argument in turn.

**A. Kava's Memory Issues**

The ALJ first references Mrs. Kava's testimony with regard to Kava's memory issues, saying "Claimant and his wife [] testified that since his heart attack he had intermittent memory deficits, mostly with short-term memory, though some long term."

AR 21.  Then in an analysis of the state agency medical consultant's opinion, the ALJ further states, "based on evidence available through the hearing and including testimony from claimant and his wife, I found that the further limitation to SVP 2 work was warranted to account for claimant's continued short-term memory complaints."  AR 25.  Kava contends that Mrs. Kava's testimony suggested greater limitation.

        Where lay testimony overlaps with the claimant's testimony, the lay testimony may be similarly discounted. Howland v. Saul, 804 F. App'x 467, 471 (9th Cir. 2020) (ALJ provided acceptable reasons why the lay statements "largely expressed the same limitations described in [the claimant's] own testimony, which the ALJ properly discounted"); Jennings v. Saul, 804 F. App'x 458, 463 (9th Cir. 2020) ("[B]ecause the ALJ offered [sufficient] reasons for discounting [the claimant's] own testimony, and because the lay testimony repeated the same limitations, the ALJ provided a germane reason for rejecting [the lay] testimony").  But dismissing Mrs. Kava's testimony as duplicative is too simplistic given Kava's cognitive issues. See Carlson v. Astrue, 682 F. Supp. 2d 1156, 1169 (D. Or. 2010) (reversing the ALJ's analysis rejecting the testimony from claimant's wife as her statements were not inconsistent with the medical evidence and she was "unquestionably in the best

21

position to observe the effects of [claimant's] impairments during the relevant time.").

Mrs. Kava provided context and color to Kava's statements that he suffered from memory problems, often acting in a capacity as his caretaker and memory-keeper. At the hearing, Kava acknowledged this dynamic, stating "I think with my health my wife know more than I do because I went through so many things." AR 47. But the ALJ in his opinion did not discuss Mrs. Kava's fairly extensive testimony on Kava's limitations. For instance, Mrs. Kava testified that while she noted improvement in Kava's memory, Mrs. Kava must make appointments for her husband, makes sure he takes his medication, and pays the bills. AR 60-61. She explained that this was quite different than before his heart attack. AR 63. She described his difficulty with comprehension and memory and how she would have to answer the same questions for him "over and over again." AR 61.

Mrs. Kava's testimony provided evidence in direct contrast to a number of medical treatment notes reflecting that Kava had indicated no memory problems, and to which contrast the ALJ expressed concern with the record. Given the nature of memory impairment, the ALJ should have discussed-and not just referenced-Mrs. Kava's testimony regarding Kava's memory issues

under the revised regulations.  The ALJ clearly erred in failing to adequately consider Mrs. Kava's testimony.

### B. Kava's CPAP Mask

The Court has discussed _supra_ Mrs. Kava's critical testimony explaining how Kava removed his CPAP mask while asleep.  This testimony provided information that Kava himself obviously could not present as he was asleep.  The Court finds that the ALJ clearly erred in not adequately considering this testimony of Mrs. Kava.

### C. Kava's Ability to Walk

Kava argues that the ALJ inadequately considered Mrs. Kava's testimony about his ability to walk.  Opening Br. at 15. In Kava's view, had the ALJ adequately considered Mrs. Kava's testimony, he would have had to contend with Kava's difficulty walking.  _Id._

But the ALJ did in fact contend with Kava's difficulty walking.  Citing to Mrs. Kava's Function Report, the ALJ summarized that Kava "tired easily, rested after walking a block, that his arms sometimes felt difficult to lift, and that he sometimes felt chest pain."  AR 22.  Mrs. Kava's testimony regarding Kava's ability to walk was nearly identical to Kava's statements on the topic and thus added no little additional value.  _See_ _Rottmann v. Comm'r of Soc. Sec._, 817 F. App'x 192, 194 (6th Cir. 2020) ("An ALJ need not discuss every piece of

evidence in the record for [the ALJ's] decision to stand."). Because Mrs. Kava's testimony did not provide some unique insight that might have triggered the ALJ's duty to address how he considered such nonmedical evidence, he was not required to do so.

Therefore, the ALJ did not err in assessing Mrs. Kava's testimony regarding Kava's ability to walk.

## V.   Whether the ALJ Erred in His Analysis of Medical Opinions

The ALJ considered medical information from Dr. Wendy Matsuno, a state agency medical consultant, and Dr. Sharon Lawler, Kava's primary care physician.  Kava takes issue with the weight the ALJ ascribed to each.  Primarily, he argues that the ALJ erred by finding the May 2018 opinion of Dr. Matsuno to be persuasive and failing to offer specific and legitimate reasons for rejecting Dr. Lawler's opinions.  Opening Br. at 25. The Court address each of Kava's arguments below and ultimately finds that the ALJ did not err in his medical opinion analysis.

### A. Framework Under Revised Regulations

For claims filed on or after March 27, 2017, revised regulations change the framework for how an ALJ must weigh medical opinion evidence.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  Under the revised regulations, the ALJ will no longer give any

24

specific evidentiary weight to medical opinions or prior

administrative medical findings, including those from treating

medical sources.  20 C.F.R. § 404.1520c(a).  Instead, the ALJ

will consider the persuasiveness of each medical opinion and

prior administrative medical finding.  20 C.F.R. § 404.1520c(c).

The ALJ is required to consider multiple factors, including

supportability, consistency, the source's relationship with the

claimant, any specialization of the source, and other factors

(such as the source's familiarity with other evidence in the

file or an understanding of Social Security's disability

program).[7]  Id.

        The regulations make clear that the supportability and

consistency of the opinion are the most important factors, and

the ALJ must articulate how they considered those factors in

determining the persuasiveness of each medical opinion or prior

administrative medical finding.  20 C.F.R. § 404.1520a(b).  The

ALJ may explain how they considered other factors, but is not

---

[7]  Kava acknowledges these 2017 revisions, Opening Br. at 23, but
nevertheless argues that the "specific and legitimate standard" must apply
based on 9th Circuit precedent predating the revisions.  Id. at 22.  Kava
cites such precedent for the proposition that in order to reject the opinion
of a treating physician, "the ALJ had to give clear and convincing reasons .
. . Even if contradicted by another doctor, the opinion of an examining
doctor can be rejected only for specific and legitimate reasons that are
supported by substantial evidence in the record."  Regennitter v. Comm'r of
Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); see also Murray v.
Heckler, 722 F.2d 499 (9th Cir. 1983).
        While it is true that the Ninth Circuit has yet to rule on whether
there is any role for the "specific and legitimate" standard set forth in
cases such as Regennitter and Murray within the new regulations, the Court
finds it is able to resolve the question before it without needing to decide
that specific issue.

required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  Id. Supportability and consistency are further defined in the regulations:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c).  In short, the "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be.  20 C.F.R. 404.1520c(c)(1)-(2).

### i. State Agency Medical Consultant:  Dr. Matsuno

The majority of Kava's briefing focuses on his argument that the ALJ erred by finding the May 2018 opinion of the state agency medical consultant-Dr. Matsuno-to be persuasive. Opening Br. at 25.  Dr. Matsuno opined that Kava could "stand and /or walk (with normal breaks) for a total of:  About 6 hours in an 8-hour workday," AR 103, and did not find Kava's brain damage and memory loss to be severe impairments.  AR 100.  In fact, Dr.

Matsuno found "little evidence of a medically determinable psychiatric impairment."  AR 100.

The ALJ found Dr. Matsuno's opinion to be persuasive, because "it was well-supported by way of explanation" and "it was consistent with the evidence as a whole . . . that showed such things as improved and stable heart conditions with some reports of fatigue and intermittent gout that did not impair walking." AR 25.  Because the ALJ explicitly discussed both supportability and the consistency in determining the persuasiveness of Dr. Matsuno's opinion, the ALJ was not required to explain how he considered any other factors.  For these reasons, the Court finds the ALJ's analysis of Dr. Matsuno's opinion sufficient to comply with the revised regulations.  However, the Court's consideration of Dr. Matsuno's medical opinion is subject to her not having the benefit of the critical testimony of Mr. and Mrs. Kava from the administrative proceeding.

### ii.  Primary Care Physician:  Dr. Lawler

Kava next argues that the ALJ failed to offer an adequate reason for rejecting Dr. Lawler's assessment of significant cognitive and obstructive sleep apnea disorders. Opening Br. at 26.  With regard to the ALJ's discussion of Dr. Lawler's assessment of significant cognitive disorders, the ALJ wrote:

> Treating notes showed that claimant in April and May of 2018 told his doctor that he was still having "some problems with words and memory," though the treating notes also described the condition as "stable." 13F/63, 65.  The doctor assessed that the condition was probably secondary to anoxic encephalopathy from the April 2017 heart attack.  13F/69.  Still, an MRI of the brain in May of 2018 found an "unremarkable" image of the brain, and his doctor opted for conservative treatment by way of continuing to monitor the condition.  13F/103.  The evidence supports a moderate limitation in this area.

AR 21.

As discussed *supra*, the new regulations make clear that ALJs are not required to accept, reject, or even give any specific evidentiary weight to a medical opinion.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must articulate in the decision "how persuasive" he or she finds the medical opinions and the prior administrative medical findings.  20 C.F.R. § 404.1520c(b).

In response to Kava's argument that the ALJ failed to offer an adequate reason for rejecting Dr. Lawler's assessment, Defendant argues that Kava failed to provide a substantive argument that Dr. Lawler issued a medical opinion that the ALJ was required to consider.  Def. Answering Br. at 18.  Under the revised regulatory standard, the ALJ's obligation to evaluate opinion evidence is triggered only if the evidence meets the definition of a medical opinion.  The revised regulations define a medical opinion as:

[A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative of postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature or fumes.

20 C.F.R. § 404.1513(a)(2).

Defendant argues that the ALJ had no obligation to discuss Dr. Lawler's treating notes because they do not constitute a medical opinion, but rather "other medical evidence." Def. Answering Br. at 19. Under the revised regulations, other medical evidence is defined as evidence "from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R § 404.1513(a)(3).

Because the information the ALJ cited from Dr. Lawler on the issue of Kava's cognitive issues does not address what Kava is still able to do or whether he has restrictions in work activities, the ALJ was not required to treat Dr. Lawler's findings as medical opinions under 20 C.F.R. § 404.1513(a)(2).

Except as to the Court's previous findings that the ALJ clearly erred with regard to Mrs. Kava's testimony and Kava's subjective testimony regarding his sleep apnea, fatigue, and cognitive difficulties, the Court finds that the ALJ did not err in his medical opinion analysis because he properly applied the relevant regulations.

## VI.   Whether the ALJ Failed to Develop the Record by Refusing to Order a Psychological Consultative Examination

Finally, Kava argues that the ALJ failed to develop the record by refusing to order a psychological consultative examination.

In determining disability, the ALJ "must develop the record and interpret the medical evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ's duty to develop the record is triggered only when there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Moreover, "[n]o authority suggests that the regulations require the ALJ to continue

developing the record until disability is established; the
regulations require only that the ALJ assist the claimant in
developing a complete record." Caijigal v. Berryhill, Civ. No.
17-00478 ACK-RLP, 2018 WL 3000543, at *4 (D. Haw. June 15, 2018)
(internal citation omitted).  The ALJ is under no duty to
develop the record further where the evidence is unambiguous and
the record is adequate.  See Mayes, 276 F.3d at 460.

　　　　"One of the means available to an ALJ to supplement an
inadequate medical record is to order a consultative
examination, i.e., 'a physical or mental examination or test
purchased for [a claimant] at [the Social Security
Administration's] request and expense.'" Reed v. Massanari, 270
F.3d 838, 841 (9th Cir. 2001) (quoting 20 C.F.R. § 416.919).
Cases which may require a consultative examination include those
in which there is an "inconsistency in the evidence, or when the
evidence as a whole is insufficient [] to make a determination
or decision."  20 C.F.R. § 404.1519a(b).

　　　　However, here the Court finds that a consultative
examination would add little value because the ALJ had adequate
testimony and medical records to properly render a decision.
Kava has failed to identify any specific ambiguities in the
record to trigger the ALJ's duty to develop the record, and the
Court finds the record before the ALJ was neither ambiguous nor
inadequate to allow for proper evaluation of the evidence.  Kava

bases his argument here solely on the fact that the ALJ "acknowledged that the evidence in the record was insufficient." Opening Br. at 27-28 (citing to the record where the ALJ said he was having a "hard time" reconciling the records). But Kava misunderstands the ALJ's statement. The ALJ did not state that he believed the evidence was insufficient, rather, he stated that the evidence repeatedly showed that Kava denied memory impairments and he was questioning the validity of testimony to the contrary. Indeed, in the same breath, the ALJ clarifies his intent in his comment, saying "I mean I'm just pointing out, Counsel, that when you look at this-I tried to find out if [the memory problem] was severe and I kept seeing at least they're telling the doctors there's not a memory problem." AR 64.

The Court finds that the ALJ was not obliged to obtain a psychological consultative examination because the record contained ample evidence to permit an informed decision. The ALJ did not err by failing to further develop the record in this case by not ordering a psychological consultative examination.

## VII.   Harmless Error and Remand

The errors at issue were not harmless. "An error is harmless only if it is inconsequential to the ultimate non-disability determination . . . or if despite the legal error, the agency's path may reasonably be discerned." Brown-Hunter v. Colvin, 806 F.3d at 494 (internal quotation marks and citation

omitted).  To consider an error harmless, the reviewing court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015).  Moreover, an ALJ's decision will be set aside "if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978)).  The Court cannot conclude on this record that the errors in applying the materiality test, taken together, were harmless.

The Ninth Circuit has cautioned that "[a] remand for an immediate award of benefits is appropriate . . . only in rare circumstances." Brown-Hunter, 806 F.3d at 495 (internal quotation marks omitted).  "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Specifically, remand is warranted to allow the ALJ to reassess the consideration given to Kava's subjective testimony as well as Mrs. Kava's testimony.  On remand, Kava should be afforded a reasonable opportunity to supplement the medical evidence to address the issues identified herein.  Kava should

33

remain cognizant that the ultimate burden of proving disability rests with him.

## **CONCLUSION**

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying SSI and SSDI benefits for the period of April 15, 2017 to December 25, 2019, and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, September 20, 2021.



_____
Alan C. Kay
Sr. United States District Judge

Kava v. Kijakazi, Civ. No. 20-00385 ACK-WRP, Order Reversing and Remanding the Decision of the Commissioner of Social Security.